UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MARK GILBERT, Plaintiff           )
                                  )
v.                                )   CIVIL ACTION NO. 16CV30024-MGM
                                  )
CITY OF CHICOPEE, WILLIAM JEBB,   )
RICHARD KOS, JOHN PRONOVOST,      )
JOHN DOE, and JANE DOE,           )
Defendants                        )

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF THE DEFENDANT,
JOHN PRONOVOST, TO DISMISS THE PLAINTIFF'S CLAIMS AGAINST HIM

I.   PLAINTIFF'S CLAIMS

Against the Defendant, John Pronovost (Lietenant Pronovost), the Plaintiffs Complaint consists of the following Counts:

| Count 1 | "Violation of 42 U.S.C. §1983, M.G.L.A. c. 12, §11H" |
| --- | --- |
| Count 4 | "Abuse of Process" |
| Count 5 | "Defamation [per se]" |
| Count 6 | "Intentional Infliction of Emotional Distress" |
| Count 7 | "Malicious Prosecution" |
| Count 8 | "Civil Conspiracy" |

The allegations in the Plaintiff's Complaint include an introductory paragraph which states the suit is from serial intentional and retaliatory acts against the Plaintiff "for his participation in a governmental investigation" involving Chief Jebb's "conduct with the Amanda Plasse murder scene photographs." The Plaintiff's makes claims against Lt. Pronovost personally, and also on his official capacity acting under color of state law. Plaintiff's Complaint, ¶¶ 8-9.

The first mention of Lt. Pronovost is that on July 19, 2013, the previous Chief,

Thomas Charette, ordered the Plaintiff to file an incident report about an incident that occurred in 2007, when Lt. Pronovost became angry and pointed his gun at the Plaintiff.  Id., at ¶38. Before the July 19, 2013 order to document this incident, there was a "silent decision" to protect Lt. Pronovost because he was depressed following the death of his wife. Id., at ¶¶ 41-43. It is alleged Lt. Pronovost engaged in strange behavior at work, and the Plaintiff complained to his shift commander, then-Captain Jebb, who "did nothing." Id., ¶¶ 50-51.  The Plaintiff was not disciplined for writing the report late, since Jebb and Charette were already aware of the incident.  Id., at ¶53.

The Plaintiff alleges that after Jebb became police chief on July 10, 2014, he had meetings with Mayor Kos and Lt. Pronovost, Pronovost's counsel, and others, whom Jebb believed impugned his character. Id., at ¶55. The Plaintiff alleges a plan was hatched for applications for criminal complaints to be written out against the Plaintiff and Charette. Id., at ¶56.

II.     ARGUMENT AND AUTHORITY

   a.     LEGAL STANDARD FOR MOTION TO DISMISS

As this Court stated recently in Lu v. Spencer, 2016 WL 740407 (D.Mass. 2016):

> To survive a 12(b)(6) motion to dismiss, a complaint must allege facts that "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Thus, the factual allegations in the complaint must "nudge[ ] [the] claims across the line from conceivable to plausible." Id. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).
>
> Courts are not required to accept as true allegations in a complaint that are legal conclusions. Id. Additionally, the First Circuit instructs that "some

> allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross 'the line between the conclusory and the factual.' " Peñalbert-Rosa v. Fortuño-Burest, 631 F.3d 592, 595 (1st Cir. 2012) (quoting Twombly, 550 U.S. at 557 n. 5). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679. In assessing a claim's plausibility, the court must construe the complaint in the plaintiff's favor, accept all non-conclusory allegations as true, and draw any reasonable inferences in favor of the plaintiff.[Footnote omitted] See San Gerónimo Caribe Project, Inc. v. Acevedo-Vilá, 687 F.3d 465, 471 (1st Cir. 2012).
>
> "Determining whether a complaint states a plausible claim for relief" is a context-specific task that requires "the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. The court considers the elements of a prima facie case in order to "determine whether the 'cumulative effect of the complaint's factual allegations' is a plausible claim for relief," though, a complaint need not 'plead facts sufficient to establish a prima facie case." Carrero-Ojeda v. Autoridad de Energia Electrica, 755 F.3d 711 (1st Cir. 2014) (quoting Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 54 (1st Cir. 2013)).

Id.

Insofar as the Plaintiff's claims are based on Lt. Pronovost's protected petitioning activity protected by the Anti-Slapp Statute, G.L. c. 231, §59H, he is entitled to immunity and dismissal of the claims against him. Blanchard v. Steward Carney Hosp., Inc., 89 Mass. App. Ct. 97 (2016).  Lt.'s Pronovost's submission of an application for a criminal complaint, an exercise of his right to petition the government, falls within the application of the Anti-Slapp statute.  As such, he is entitled to dismissal of the Plaintiff's claims for defamation, abuse of process and malicious prosecution.  Under that statute, "any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or

any other governmental proceeding ..." Id., at __, quoting <u>Cadle Co. v. Schlichtmann</u>, 448 Mass. 242, 248 (2007).

  b. Plaintiff's Count 1 – §1983 and Mass. Civil Rights Statute

The Plaintiff's Count 1 (Violation of §1983, and G.L. c. 12, §11H) alleges that Lt. Pronovost and the other Defendants retaliated against him for "speaking out and participating" in two investigations (one by the City of Chicopee and another by the Hampden County District Attorney), and for hiring counsel to represent him in those investigations. Plaintiff's Complaint, at ¶¶ 61-64. The Plaintiff alleges the Defendants acted under color of state law in violating his due process rights. Id., at ¶64. As such, the Defendants' interfered by means of threats, intimidation or coercion, with the Plaintiff's rights under the laws and Constitutions of the U.S. and Massachusetts, as political retribution. Further, the Defendants "imputated" the Plaintiff in criminal conduct, engaged in a pattern of discipline and harassment that was a pretext for retribution by Chief Jebb, acting in a knowing and intentional manner, by which the Plaintiff was damaged. Id., at ¶¶ 66-70.

The First Circuit has stated a claim under §1983 has two essential elements: the defendant must have acted under color of state law, and his conduct must have deprived the plaintiff of rights secured by the Constitution or by federal law. The second element requires the plaintiff to show that the defendant's conduct was the cause in fact of the alleged deprivation. <u>Gagliardi v. Sullivan</u>, 513 F.3d 301, 306(1st Cir. 2008).

Here, the Plaintiff does not set forth what Constitutional or federally secured rights were violated, except a vague reference to "due process" and he had a right of

free speech, and not to be retaliated against for "speaking out," not be retaliated against for exercising his free speech rights, for participating in a government investigation, and for hiring a lawyer.

As noted in <u>Sullivan</u>, supra, claims of retaliatory adverse employment action for the exercise of First Amendment rights are cognizable under §1983. To plead an actionable claim, the Complaint must establish the speech was protected under the First Amendment so as to shield a plaintiff from adverse employment action in retaliation for such speech, the plaintiff suffered adverse employment action in retaliation for such speech, and the protected expression was a substantial or motivating factor in the adverse employment decision.  Id., 513 F.3d at 307.  As the Court explained, whether a public employee is shielded from adverse employment action for engaging in speech is governed by a two-step inquiry that asks whether the employee spoke as a citizen on a matter of public concern and, if so, whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.  These are issues of law for the court.   Id., at 306 n.8 (internal citations and quotations omitted).

Here, the Plaintiff has not alleged facts to show his speech was protected, he has not alleged facts showing Lt. Pronovost subjected him to any adverse employment action,[1] and has not set out how Lt. Pronovost retaliated against him for his exercising protected speech, nor specifically what was said that is claimed to be free speech.  The Plaintiff also does not state facts to show how Lt. Pronovost's actions

---

[1] The Plaintiff's Complaint vaguely states the Defendants used a pretext to discipline him, ¶91. Later, the Plaintiff's Complaint states: "The Defendants with commanding influence in the Plaintiff's work place have continued, even in writing to state that the Plaintiff committed a crime, was untruthful and have even suspended him from his employment." Id., ¶128.

caused those rights to be violated. There is no allegation of any adverse personnel action, or any actual deprivation of Constitutional or federally secured rights, carried out by Lt. Pronovost.

With respect to the Plaintiff's claim his "due process" rights were violated, this claim also lacks heft and fails to meet the plausibility test. His employment was not terminated, nor was he demoted or subject to any adverse personnel action. Even if this had happened, for an actionable claim to lie it would have to be Lt. Pronovost who terminated the Plaintiff, or acted to deprive him of his due process rights. There are not facts alleged that plausibly sketch such a claim.

In order to establish a claim under the Massachusetts Civil Rights Act (MCRA), G.L. c. 12, §§ 11H, 11I, a plaintiff "must prove that (1) [his or her] exercise [or] enjoyment of rights secured by the Constitution or the laws of either the United States or the Commonwealth, (2) have been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by threats, intimidation or coercion." Roman v. Trustees of Tufts College, 461 Mass. 707, 711 (Mass. 2012) (quoting Kennie v. Natural Resource Dep't of Dennis, 451 Mass. 754, 759 (Mass. 2008). The MCRA does not protect against direct violations of constitutional rights. Longval v. Comm'r of Correction, 404 Mass. 325, 333-334 (Mass. 1989), Rather, the interference with the right must occur by means of threats, intimidation, or coercion. Mass Gen. Laws ch. 12, § 11H; see Longval, supra. In this context, a "threat" is "the intentional exertion of pressure to make another fearful or apprehensive of injury or harm." Planned Parenthood League of Massachusetts, Inc. v. Blake, 417 Mass. 467, 474 (Mass. 1994). "Intimidation" means to cause "fear for

the purpose of compelling or deterring conduct." Id. "Coercion" is "the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done." Id. (quoting Deas v. Dempsey, 403 Mass. 468, 471 (Mass. 1988)).

The Plaintiff has included in his Complaint an allegation that the Defendant interfered or attempted to interfere with his exercise or enjoyment of the Constitution, U.S. law or Massachusetts law, by means of threats, intimidation or coercion. Complaint, ¶65. The interfered-with rights were his "constitutional rights in political retaliation and retribution." Id., at ¶66. There are simply no facts alleged that plausibly suggest an entitlement to relief, only the robotic recitation of the required elements.

    c.    Plaintiff's Count 4 – Abuse of Process

Count 4 (Abuse of Process) against Lt. Pronovost alleges the Defendants were aware of the gun pointing incident in 2007, however without any cause or justification, used "a process" to charge him with filing a false police report, and an application for a show cause hearing to determine if caused existed to issue a criminal complaint. Id., at ¶¶ 84-86. Lt. Provonost knew he had no basis to do so, but initiated the criminal complaint against the Plaintiff, then took the test for a promotion to Captain. Id., at ¶¶ 87-88. The process terminated in the Plaintiff's favor, and was used by the Defendants for an illegitimate purpose to harass and defame him, and discipline him under a pretext, and such conduct was knowing, willful and malicious, damaging the Plaintiff. Id., at ¶¶ 90-93.

An abuse of process claim requires a plaintiff to show "(1) that process [has

been] used (2) for an ulterior or illegitimate purpose, (3) resulting in damage to the plaintiff." Refuse & Envtl. Sys., Inc. v. Indus. Servs. of Am., Inc., 932 F.2d 37, 41 (1st Cir.1991) (citing Datacomm Interface, Inc. v. Computerworld, Inc., 396 Mass. 760, 489 (1986)); see also Ladd v. Polidoro, 424 Mass. 196, 198 (1997).

The Complaint is lacking in facts that process was used by Lt. Pronovost "for an ulterior or illegitimate purpose" which damaged the Plaintiff. The facts allege do not set forth a plausible claim, nothing ulterior or illegitimate from the fact Lt. Pronovost took an exam for Captain after an application for a criminal complaint was filled out and submitted (which a Magistrate later found probable cause to issue a criminal complaint). In sum, facts which plausibly assert an ulterior or illegitimate purpose on Lt. Pronovost's part, and resultant damages to the Plaintiff, are not set forth as required to set out an actionable claim.

Further, the Anti-SLAPP immunity applies to abuse of process claims. See Fabre v. Walton, 436 Mass. 517 (2002); Adams v. Whitman, 62 Mass. App. Ct. 850 (2005).

    d.    Plaintiff's Count 5 – Defamation Per Se

The Plaintiff's Complaint alleges the Defendants acted "maliciously with a reckless disregard for the truth" in accusing the him of filing false reports, causing him to be charged in Holyoke District Court with a crime of filing false reports, charges the Defendants initiated. Plaintiff's Complaint, at ¶¶ 95-96. In reckless disregard of the truth, and knowingly and maliciously, the Defendants "created a Defamatory Falsehood." Id., at ¶97. On January 26, 2016, the Defendants then created more false accusations about the Plaintiff being untruthful in August 2015, in

order to influence the Plaintiff's criminal trial. Id., at ¶¶ 98-99. There was no conceivable basis to believe the Plaintiff committed any crime. Id., at ¶100.  The allegations were created to retaliate against the Plaintiff, he feels embarrassment and ridicule due to malicious "oral and written statement of the Defendants" and  "has been damaged ..." Id., at ¶¶ 101-103.

In Massachusetts, a defamation claim is established where the plaintiff satisfies the court that: "(1) a defendant made a false statement 'of and concerning' the plaintiff; (2) the statement could damage the plaintiff's reputation in the community; (3) the defendant was at fault in making the statement; and (4) the statement caused economic harm or is actionable without proof of economic loss." Albright v. Morton, 321 F.Supp.2d 130, 134 (D.Mass.2004), aff'd sub nom. Amrak Prods., Inc. v. Morton, 410 F.3d 69 (1st Cir.2005).

The infirmities in the Plaintiff's Complaint are legion.  The Plaintiff does not set forth what Lt. Pronovost allegedly said about him. See Phantom Touring, Inc. v. Affiliated Publications, 953 F.2d 724, 728 n. 6 (1st Cir.), cert. denied, 504 U.S. 974(1992) ("a defendant is entitled to knowledge of the precise language challenged as defamatory, and the plaintiff therefore is limited to its complaint in defining the scope of the alleged defamation").   Cf. Mulvihill v. Spalding Sports Worldwide, Inc., 184 F.Supp.2d 99, 104 (D. Mass. 2002) (Ponsor, J.) (dismissal of defamation claim for failure to set forth the general tenor of the libel or slander claim, along with the precise wording of at least one sentence of the alleged defamatory statements).

"To prevail on a defamation claim under Massachusetts law, a plaintiff must show that the defendant was at fault for the publication of a false statement of and

concerning the plaintiff which was capable of damaging his or her reputation in the community, and which either caused economic loss or is actionable without proof of economic loss." Freeman v. Town of Hudson, 849 F.Supp.2d 138, 160 (D.Mass. 2012) (quoting Damon v. Moore, 520 F.3d 98, 103 (1st Cir.2008)). While "[c]harges of crime are slanderous and actionable per se without proof of special damage ... it is well settled that statements made in the course of judicial proceedings which pertain to those proceedings are absolutely privileged and cannot form the basis for a defamation claim, even if uttered with malice or in bad faith." Sietins v. Joseph, 238 F.Supp.2d 366, 378 (D.Mass. 2003) (internal quotation marks omitted). "Similarly, an application for a criminal complaint is generally considered as involving a form of judicial proceeding and the statements made therein are absolutely privileged." Id. (internal quotation marks omitted).

Since the application for a criminal complaint is not an actionable defamation, the Plaintiff would need to plead more than "false accusations." An allegation the Defendant made malicious oral and written statements about him that were false and damaged him is simply not sufficient to state a plausible claim. The Plaintiff alleges there was no conceivable basis for an objective person to believe he committed a crime (Complaint ¶100), nonetheless he claims there was a statement made that could damage his reputation in the community.

Finally, the Plaintiff's Complaint fails to allege facts concerning Lt. Pronovost being at fault in making the alleged defamatory statement, a required element to state an actionable claim.

    e.    Plaintiff's Count 6 – Intentional Infliction of Emotional Distress ("IIED")

As to Count 6, the Plaintiff alleges the Defendants have engaged in a series of intentional acts and conduct which have held tile Plaintiff out to ridicule and scorn; they maliciously accused the Plaintiff of committing a crime; they fabricated events to create a pretext for discipline against him; their conduct was extreme and outrageous; they continued to create a Defamatory Falsehood against him; he suffered humiliation, scorn and embarrassment; at all times their conduct was intentional and malicious; he was damaged by their intentional conduct. Id.,at ¶¶ 105-111.

To make out a claim for intentional infliction of emotional distress, a plaintiff must show (1) that the defendant intended, knew, or should have known that its conduct would cause emotional distress (2) that the conduct was extreme and outrageous (3) that the conduct caused emotional distress and (4) that the emotional distress was severe. See Polay v. McMahon, 468 Mass. 379, 385 (2014) (citing Howell v. Enter. Publ. Co., 455 Mass. 641, 672 (2010)). As to the last element, the emotional distress must be so severe "that no reasonable person could be expected to endure it." Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 466 (1997). "The standard for making a claim of intentional infliction of emotional distress is very high." Polay, supra at 379, 385 (2014) (quoting Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996)). A plaintiff who alleges "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" will not meet his burden, nor will a plaintiff who alleges, without more, only "tortious or even criminal" intent. Tetrault, supra at 466. To prove the requisite extreme and outrageous conduct, a plaintiff must show that the conduct "go[es] beyond all possible bounds of decency,

and [is] regarded as atrocious, and utterly intolerable in a civilized community." Polay, supra at 386.

The Plaintiff's Complaint fails to state an actionable IIED claim as it sets forth no facts, nor even a conclusion, that the distress allegedly suffered was severe. This alone is fatal. See Kruskall v. Sallie Mae Serv., 2016 U.S. Dist. LEXIS 32507 (March 14, 2016), citing McHenry v. United States, 1998 U.S. App. LEXIS 4699, 1998 WL 121846, at *1 (1st Cir. 1998) (affirming dismissal of intentional infliction of emotional distress claim where plaintiff "failed to allege that [defendant's] conduct caused severe emotional distress"); Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996) (affirming Judge Freedman's dismissal of intentional infliction of emotional distress claim where plaintiff did not "even attempt[] to plead severe distress").

The Plaintiff's allegations do not alleged facts suggesting egregious enough conduct. Accord, Guckenberger v. Boston Univ., 957 F. Supp. 306, 318 (D.Mass. 1997) (factual allegations in complaint were not extreme and outrageous enough to state a claim for IIED). "It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitled the plaintiff for punitive damages for another tort." Comment d., Restatement (Second) of Torts, § 46.

"To be considered extreme and outrageous, the defendant's conduct must be beyond all bounds of decency and . . . utterly intolerable in a civilized community. Liability cannot be founded upon mere insults, threats or annoyances." Sena v. Commonwealth, 417 Mass. 250, 263-264 (1994). See Foley v. Polaroid Corp., 400

Mass. 82, 99 (1987) (liability cannot be predicated on mere "indignities, threats, annoyances or petty oppressions or other rivalries."). The term outrageous describes "more than workaday insults, annoyances, or even threats and petty oppressions." Conway v. Smerling, 37 Mass. App. Ct. 1, 8 (1994). "Life is crowded with events that cause emotional upset and turmoil. [T]he [decided] cases indicate that Massachusetts law keeps a reasonably tight rein on the tort remedy for intentional infliction of emotional distress." Chakrabarti v. Cohen, 31 F.3d 1, 6 (1st Cir. 1994).

What is required is "a high order of reckless ruthlessness or deliberate malevolence" resulting in "profoundly shocking conduct." Agis v. Howard Johnson Co., 371 Mass. 140, 145 (1976).

Even taking all the conclusory assertions as true, Lt. Pronovost's alleged conduct was not sufficiently extreme, outrageous, intolerable and uncivilized as to be actionable.

    f.    Count 7 – Malicious Prosecution

As to Count 7 (Malicious Prosecution), the Plaintiff alleges the Defendants sought process and caused a criminal prosecution against the Plaintiff; the prosecution was malicious and meritless; the Defendants actively participated in initiating legal process against the Plaintiff knowing the criminal charges they sought were groundless and lacked any probable cause; the Defendants on January 26, 2016 further created additional false accusations from August of 2015 claiming the Plaintiff was untruthful; the Defendants engaged in this conduct one-week before Plaintiff's scheduled criminal trial in a desperate attempt to try and influence the finder of fact; more than twenty months after the Plaintiff provided the ordered-statement, there could have been no conceivable basis to believe that the Plaintiff committed any crime; the prosecution terminated in the Plaintiff's favor; and

the Plaintiff was damaged by the Defendants' conduct.  Plaintiff's Complaint, at ¶¶ 113-120.

The elements of a malicious prosecution claim are: "(1) commencement or continuation of a criminal proceeding against the eventual plaintiff at the behest of the eventual defendant; (2) the termination of the proceeding in favor of the accused; (3) an absence of probable cause for the charges; and (4) actual malice." Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir.2001) (citing Correllas v. Viveiros, 410 Mass. 314, 318 (1991)). "The essential element to be proved is that the defendant lacked probable cause to believe that the plaintiff had committed the crime charged, and the plaintiff has the burden of proving that element." Carroll v. Gillespie, 14 Mass. App. Ct. 12, 19 (1982). "Probable cause in the context of a civil action for malicious prosecution has long been defined as 'such a state of facts in the mind of the ... (defendant) as would lead a man of ordinary caution and prudence to believe, or entertain an honest and strong suspicion,' that the plaintiff had committed a crime." Lincoln v. Shea, 361 Mass. 1, 4–5 (1972). As suggested by the definition, whether probable cause existed is judged by an objective, rather than a subjective standard. Seelig v. Harvard Coop. Soc., 1 Mass. App. Ct. 341, 344 (1973).

The fact a criminal complaint issued against the Plaintiff means there was a show cause hearing where a magistrate found probable cause to believe a crime was committed by the Plaintiff.  This is fatal to the Plaintiff's malicious prosecution claim.

g. Count 8 – Civil Conspiracy

The Plaintiff's Count 8 ("Civil Conspiracy") alleges the Defendants' acted in unison to interfere with the Plaintiff's civil rights and employment rights in an attempt: to coerce the Plaintiff him to quit his employment; to create a pretext for discipline; to "avenge Jebb's

anger;" and to open up a Captain's position for Pronovost to fill. Plaintiff's Complaint, at ¶122. The Defendants acted in unison to interfere with the Plaintiff's Freedom of Speech and Association for illegitimate and retaliatory purposes, and maliciously and without any basis sought a criminal complaint against him. Id., ¶123. The Defendants knew the written report the Plaintiff made "was true" and had "already been reported to Police management at the time." Id., at 125. Although the City of Chicopee had already made a decision that no discipline would occur to Mark Gilbert for participating in the government investigation and for providing testimony as to the acts of Jebb and Pronovost, that changed when Mayor Kos appointed Jebb as police chief. The Defendants then acted "jointly" to try to "command" the Plaintiff to "voluntarily" quit his employment. Id., 127. "The Defendants with commanding influence in the Plaintiff's work place have continued, even in writing to state that the Plaintiff committed a crime, was untruthful and have even suspended him from his employment." Id., at 128. Under no circumstances could it be concluded the Plaintiff committed a crime, "20 months after the ordered statement." Id., at 129. The Defendants acts were planned, knowing and intentional, and in unison to attempt to make his resign his employment, engaging in "a pattern of harassment and embarrassment" by which the Plaintiff has "been damaged." Id., at 130-132.

"Massachusetts recognizes two types of civil conspiracy: true conspiracy and conspiracy based on vicarious liability. See Taylor v. American Chemistry Council, 576 F.3d 16, 34-35 (1st Cir.2009). To establish true conspiracy, plaintiffs must show that "defendants, acting in unison, had some power of coercion over [plaintiffs] that they would not have had if acting independently." Inman v. Siciliano, 2012 WL 1980408, at *16 (D.Mass. May 31, 2012) (internal quotations omitted). Conspiracy based on vicarious

liability, on the other hand, "requires first, a common design or agreement, although not necessarily express, between two or more persons to do a wrongful act and, second, proof of some tortious act in furtherance of the agreement." Id. (internal quotations omitted).

It appears the Plaintiff is straddling both theories, however his allegations fall short of stating a plausible claim. As to the "true conspiracy" theory, there is no power of coercion that the Mayor, the police chief and Lt. Pronovost are alleged to have which was greater than if they had acted apart. A plaintiff's failure to allege facts that the combined defendants gave them a "peculiar power of coercion" over him. This is fatal to the Plaintiff's claim, requiring its dismissal for failure to state a claim. See King v. Wells Fargo Mortg., 2013 WL 1196664 (D. Mass. 2013), citing DesLauries v. Shea, 300 Mass. 30, 33 (1938). Similarly, there is no clear allegation of an agreement to do a wrongful act, and allegation there was then a serious tortious act in furtherance of the agreement, as would be required for the "vicarious liability" species of civil conspiracy. Evidence of mere joint tortious activity by the Defendants is insufficient to prove civil conspiracy. Fleming v. Dane, 304 Mass. 46, 50 (1939). The key to this such cause of action is a defendant's substantial assistance to another, with the knowledge that such assistance is contributing to a common tortious plan. Haemonetics Corp. v. Dupre, 238 B.R. 224, 228 (D.Mass.1999), quoting Kurker v. Hill, 44 Mass. App. Ct. 184, 189 (1998), aff'd 229 F.3d 1133 (1st Cir. 2000). Lacking here are facts about Lt. Pronovost rendering assistance to the other Defendants, all the while knowing such assistance was furthering some common plan to commit a tort against the Plaintiff.

IV. CONCLUSION

For all the foregoing reasons, the Defendant, John Pronovost, respectfully requests

the Court to dismiss the claims set forth against him in Counts 1, 4, 5, 6, 7 and 8.

                                            JOHN PRONOVOST, Defendant

                                            By /s/ John T. Liebel  
                                            JOHN T. LIEBEL (BBO #299660)  
                                            LAW OFFICE OF JOHN T. LIEBEL  
                                            73 Chestnut Street  
                                            Springfield, MA 01103  
                                            Ph. (413) 781-1004  
                                            Fax (413) 736-2278  
                                            E-mail: John.Liebel@verizon.net

## CERTIFICATE OF SERVICE

      I certify that a true copy of the within document was filed through the ECF system and will be sent electronically to the registered participants as identified on the notice of electronic filing and paper copies will be sent to those indicated as non-registered participants on March 31, 2016.

                                            /s/ John T. Liebel  
                                            JOHN T. LIEBEL