UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARK GILBERT, Plaintiff )<br>)<br>v. )<br>)<br>CITY OF CHICOPEE, WILLIAM JEBB, )<br>RICHARD KOS, JOHN PRONOVOST, )<br>JOHN DOE, and JANE DOE, Defendants ) | CIVIL ACTION NO. 16CV30024-MAP |

## OPPOSITION OF DEFENDANT JOHN PRONOVOST
## TO PLAINTIFF'S MOTION TO AMEND COMPLAINT

Now comes the Defendant, John Pronovost, to oppose the Plaintiff's Motion to Amend Complaint (Dkt. #67), on the grounds set forth herein.

I. **THE PLAINTIFF'S MOTION TO AMEND IS UNTIMELY AND PREJUDICIAL**

Although leave to amend should freely given "when justice so requires," FED. R. CIV. P. 15(a)(2), "[t]he liberal amendment policy prescribed by Rule 15(a) does not mean that leave will be granted in all cases." 6 Charles Alan Wright & Arthur R. Miller, FED. PRAC. & PROC. CIV. § 1487 (3d ed.) Leave to amend may be denied when "the request is characterized by 'undue delay, bad faith, futility, [or] *the absence of due diligence on the movant's part.*' " Calderón-Serra v. Wilmington Trust Co., 715 F.3d 14, 19 (1st Cir. 2013) (quoting Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006)) (emphasis added).

Here, the Plaintiff seeks to amend his Complaint to "provide[] more of factual foundation ... [and] to provide additional supporting facts based on the record already before the Court." The Plaintiff states "very little prejudice will result [from] the amendment." Plaintiff's Motion to Amend Complaint, Dkt. #67. No justification is given why the now

sought amendment was not requested when the Defendants' motions to dismiss were filed (or a month earlier upon receipt of the Defendants pre-motion letter pursuant to Local Rule 7.1). The Plaintiff's motion was filed 87 days after the Court held a hearing on the Defendants' motion to dismiss, and 10-1/2 months after the motions to dismiss were filed pointing up the shortcomings of the Complaint.

The Plaintiff had ample opportunity to seek to amend his Complaint. The Plaintiff was on long notice of the insufficiency of his suit allegations, and chose not to seek to attempt to remedy those shortcomings (maintaining all along there were no shortcomings). Relying on the fact the target was not moving, the parties have no spent significant resources litigating the sufficiency of the Plaintiff's Complaint. So too the Court convened and heard arguments on the merits of that Complaint, and took the matter under advisement, with the Plaintiff standing on the sufficiency of his pleading. This is not a case where the Plaintiff saw what quarter of the sky the sun was in and promptly moved for leave to amend.

"[A] motion to amend should be made as soon as the necessity for altering the pleading becomes apparent. A party who delays seeking an amendment is acting contrary to the spirit of the rule and runs the risk of the court denying permission because of the passage of time." Charles Alan Wright & Arthur R. Miller, 6 FED. PRAC. & PROC. CIV. § 1488 (3d Ed.). Here, Officer Pronovost would be prejudiced by having to prepare a new motion to dismiss the amended complaint, as the Plaintiff straddles positions that there was nothing wrong with the original complaint, and that permitting him amend is vital to flesh out his claims so they are plausibly viable. Cf. Carroll v. Stryker Corp., 670 F.Supp.2d 891 (W.D. Wis. 2009) (leave to

amend denied after parties had slogged through expensive and time consuming summary judgment motion process). Accord, Royal Indem. Co. v. King, 532 F.Supp.2d 404, 417-418 (D.Ct. 2008) (requested amendment denied to allow plaintiffs "to amend their complaint to add new facts and legal theories to support their rejected claims" since plaintiff had "ample opportunity" to amend before adjudication of then-pleaded claims, and defendants would be prejudiced by having to defend them).

"Among the good reasons ... for which a motion to amend may be denied are that no justification for the lateness of the motion is apparent [beyond counsel for the moving party having had a late-dawning idea] and that one or more of the nonmoving parties would be caught off balance by the proffered amendment." DiVenuti v. Reardon, 37 Mass. App. Ct. 73, 77 (1994). The Plaintiff here has offered no reasons to justify his delay in requesting leave to amend, except to point out that the parties attempted to resolve the claims by mediation between the time of the dismissal motions' filing and the hearing on those motions.[1] It is generally recognized that settlement efforts will not relieve parties from their obligations. Here, had the Plaintiff viewed the amendment as important to addressing insufficiencies in his claims, he should have sought leave of court as soon as possible. It is no justification to point out that he was trying to settle the case. "When 'considerable time has elapsed between the filing of the complaint and the motion to amend, the movant has [at the very least] the burden

---

[1] Cf. Friedman v. Transamerica Corp., 5 F.R.D. 115 (D.Del. 1946) (where no showing of excusable oversight was made, denial of leave to amend was warranted as amendment was not sought until after motion to dismiss briefs were filed and hearing date set).

of showing some valid reason for his neglect and delay.'" In re Lombardo, 755 F.3d 1, 3 (1st Cir. 2014) (quoting Stephanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 933 (1st Cir. 1983)). Denial of leave to amend is justified where there is no showing of valid reasons for neglect and delay. See Eastern Fisheries, Inc. v. Airgas USA, LLC, 166 F.Supp.3d 124, 127 (D.Mass. 2016).

A party moving to amend has " '[at the very least] the burden of showing some valid reason for his neglect and delay.' Perez v. Hosp. Damas, Inc., 769 F.3d 800, 802 (1st Cir. 2014) (citations omitted). In assessing whether a movant has carried this burden, courts must take into account '[w]hat the plaintiff knew or should have known and what he did or should have done.' Leonard v. Parry, 219 F.3d 25, 30 (1st Cir. 2000)." Hagerty ex. rel. United States v. Cybertronics, Inc., 844 F.3d 26, 34 (1st Cir. Dec. 16, 2016). Here, Mr. Gilbert does not claim the additional material in his proposed Amended Complaint was unknown to him until recently, or other justification for waiting to add to his suit allegations. The First Circuit has held a party, put on notice of the deficiencies of his complaint by a motion to dismiss, cannot hold back and await the outcome of that motion. "If [he] had something relevant to add, [he] should have moved to add it then." Fire and Police Pension Ass'n of Colorado v. Abiomed, Inc., 778 F.3d 228, 247 (1st Cir. 2015). Plaintiffs are not "entitled to wait and see if [their] amended complaint was rejected by the district court before being put to the costs of filing [an additional] amended complaint." ACA Financial Guaranty Corp. v. Advest, Inc., 512 F.3d 46, 57 (1st Cir. 2008).

> The [plaintiff] ha[s] it exactly backwards -- [his] methodology would lead to delays, inefficiencies, and wasted work. [Plaintiffs] do not get leisurely repeated bites at the apple, forcing a district judge to decide whether each successive complaint was adequate …. Plaintiffs may not, having the needed information, deliberately wait in the wings for a year and a half with another amendment to a complaint should the court hold the first amended complaint was insufficient. Such an approach would impose unnecessary costs and inefficiencies on both the courts and party opponents.

Id.

" 'In determining the impact of granting leave on judicial economy, a court should consider how the amendment would affect the use of judicial resources and the impact on the judicial system.' 3 Moore's Federal Practice § 15.15[1]. 'The burden to the judicial system can justify a denial of a motion to amend even if the amendment would cause no hardship at all to the opposing party.' Perrian v. O'Grady, 958 F.2d 192, 195 (7th Cir.1992) (citations omitted)." In re "Agent Orange" Product Liability Litigation, 220 F.R.D. 22, 25 (E.D.N.Y. 2004). Where "extensive briefs and supporting evidence now before the court in the pending motion to dismiss are predicated on [a] present complaint" and granting leave to substitute an amended complaint would require "large additional expenditures of time and effort ... by the court and parties[,]" denial of the proposed amendment was warranted. Id., at 26. Accord, Local 472 of United Ass'n of Journeymen and Apprentices of Plumbing and Pipefitting Industry of U.S. and Canada v. Georgia Power, 684 F.2d 721, 724-725 (11th Cir. 1982) (motion to amend filed after all defendants moved for summary judgment, after case had been pending for two years, was nothing more than effort to avoid summary judgment and was properly denied); Spolkin v. Guardian Life Ins. Co. of America, 94 F.Supp. 2d 988 (S.D.Ind. 2000) (denial of amendment sought two months after defendant's summary judgment was filed where amendment request

was devoid of explanation why claims could not have been asserted earlier).

II. **THE PLAINTIFF'S MOTION TO AMEND IS FUTILE**

" 'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996). "In assessing futility, the district court must apply the standard which applies to motions to dismiss under F̲ED̲. R. C̲IV̲. P. 12(b)(6). Morgan v. Town of Lexington, 823 F.3d 737, 742 (1st Cir. 2016) (citation omitted).

"In assessing futility, the district court must apply the standard which applies to motions to dismiss under F̲ED̲. R. C̲IV̲. P. 12(b)(6)." Adorno v. Crowley Towing and Transp. Co., 443 F.3d 122 (1st Cir. 2006) (citing Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996)). Thus, the court "accept[s] as true all well-pleaded facts in the complaint and draw[s] all reasonable inferences in the pleader's favor." Guerra-Delgado v. Popular, Inc., 774 F.3d 776, 780 (1st Cir. 2014) (citing Tasker v. DHL Ret. Sav. Plan, 621 F.3d 34, 38 (1st Cir. 2010)). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). For a claim to have facial plausibility, "th[e] factual content, ... taken [as true], '[must] allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (citing Iqbal, 556 U.S. at 678). " 'The make-or-break standard ... is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief.' " Id. (quoting Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010)).

The Plaintiff's Proposed Amended Complaint is still deficient, and still fails to set forth plausibly meritorious claims. The Complaint contains 59 paragraphs of factual allegations, the new one 99. The Plaintiff has not set forth what new matters are asserted,[2] only that they amplify what is previously alleged so as to make all of his claims sufficient. To attempt to track what changes were made is near-impossible and time consuming.

The new allegations are similar, but substantially rewritten from the original complaint and contain numerous additional facts. Among them are that the Plaintiff was given illegal orders to cooperate with an investigation by the Hampden County District Attorney's Office and an investigation carried out by Pavone Investigations on behalf of the City of Chicopee regarding the showing of photographs from the Amanda Plasse crime scene, since cooperation with investigations were not within his job description or duties as a police officer. See Dkt. #67-1, ¶¶ 34, 57. There are additional facts painting a picture of hurt feelings and strange conduct, and disparate allegations of bad acts. The Complaint see-saws between alleging too much investigation took place, or not enough. Compare Dkt.#67-1, to ¶¶ 53 and 44, 74. Many

---

[2] To attempt to track the changes between the original complaint and the proposed amended one is near impossible (albeit very time consuming). Paragraphs 1-10 are identical, then there are jumbled additions in the new complaint through ¶17, where it more or less states the same thing as original complaint ¶12. Then the new complaint lurches off into similar although different allegations, sketching a police department in disarray with in-fighting and factions, jumping around between dates, events, sentiments, and interactions. Paragraphs in the new complaint 38-50 are largely drawn from ¶¶ 38, 41-50, and 51 of the original complaint. The new complaint is more specific about the allegations of which then-Officer Jebb was accused, proposed complaint ¶26. It appears the allegations in ¶¶ 51-53 are new, as are many in the range between ¶¶ 55-99. It is alleged that over 10 weeks between specific dates in 2014, Officer Provonost and Chief Jebb "conspired to have Defendant Pronovost take out a criminal application against Plaintiff Gilbert." Dkt. 67-1, ¶ 85.

of the Plaintiff's complaints would seem to be subject to a union grievance, rather than a federal lawsuit.

The Plaintiff's Count 1 for violation of 42 U.S.C. §1983 was expanded from 10 paragraphs to 15. The theory of relief is changed, and the prospective claim asserts the Plaintiff's due process rights were interfered-with, since he had a property right in his continued employment and could only be fired upon just cause. See Dkt. #67-1, ¶112. It is clear the Plaintiff was not fired, only the Defendants tried to create just cause, and that somehow this damaged him. Id. ¶113.

As to Count 4, the next claim against the Defendant Pronovost, the proposed amended complaint contains no new allegations. Ditto Count 5 (Defamation), Count 6 (Intentional Infliction of Emotional Distress), and Count 7 (Malicious Prosecution).

For Count 8 (Civil Conspiracy), there are new allegations in ¶¶ 171-172:

172. Defendant Jebb and Kos both knew that the collective bargaining agreement prevented them from implementing a discharge or discipline arising from the plaintiff's July 2013 statement to government investigators.

173. Defendants Kos then planned with Defendant Pronovost to have Pronovost seek criminal complaints against both the Plaintiff and Charette for their participation in a government investigation and for speaking out against Defendant Jebb's conduct.

The new assertions change little except to make a conclusory assertion that Officer Pronovost and Mayor Kos "planned" to have him seek a criminal complaint against the Plaintiff and Thomas Charette "for speaking out against [Chief] Jebb's conduct." This makes no sense. No criminal process was sought against Mr. Charette, and the criminal complaint sought against the Plaintiff was for filing a false police report (not for cooperating in an

8

investigation). At bottom, the infirmities -- pointed out in Officer Pronovost's motion to dismiss as to the claims against him -- still exist. See Dkt. 24 & 25. The new factual allegations contained in ¶¶ 55-99 are set forth in conclusory fashion, and bespeak speculation and guesswork.

This case is comparable to <u>Barry v. Wing Memorial Hosp.</u>, 142 F.Supp.2d 161, 168 (D.Mass. 2001), where the plaintiff sought leave to amend her complaint "not [to] assert any new claims or legal theories ... [but to] 'amplif[y] those alleged facts which form the basis' for [his] pre-existing claims.' " This Court held the facts had already been discovered and amplified and "amending the claims to include those amplifications would not stave off summary judgment."

\* \* \*

WHEREFORE, the Defendant, John Pronovost, respectfully requests the Court *DENY* the Plaintiff's motion for leave of Court to file his Proposed Amended Complaint.

JOHN PRONOVOST, Defendant

By <u>*/s/ John T. Liebel*</u>
JOHN T. LIEBEL (BBO #299660)
LAW OFFICE OF JOHN T. LIEBEL
73 Chestnut Street
Springfield, MA 01103
Ph. (413) 781-1004
Fax (413) 736-2278
E-mail: John.Liebel@verizon.net

# CERTIFICATE OF SERVICE

  I certify that a true copy of the within document was filed through the ECF system and will be sent electronically to the registered participants as identified on the notice of electronic filing and paper copies will be sent to those indicated as non-registered participants on February 22, 2017.

            */s/ John T. Liebel*
            JOHN T. LIEBEL