UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

CIVIL ACTION NO. 3:16-CV-30024-MAP

| | |
|---|---|
| MARK GILBERT, | ) |
|     Plaintiff | ) |
| | ) |
| vs. | ) |
| | ) |
| CITY OF CHICOPEE, WILLIAM JEBB, | ) |
| RICHARD KOS, JOHN PRONOVOST, | ) |
| JOHN DOE & JANE DOE, | ) |
|     Defendants | ) |

## DEFENDANTS, CITY OF CHICOPEE AND RICHARD KOS', MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Now come the defendants, City of Chicopee (the "City") and Richard Kos ("Mayor Kos") (collectively, "defendants"), and respectfully submit this memorandum of law in support of defendants' motion to dismiss Plaintiff's Amended Complaint & Demand for Jury Trial (the "Amended Complaint").

The Amended Complaint, which was filed almost four months after the hearing on defendants' motion to dismiss the original complaint, and which followed the Court's order that the proposed amended complaint filed by plaintiff on February 13, 2017 be amended, confirms that plaintiff lacks factual support for any claim against either the City or Mayor Kos.  As Against the City and Mayor Kos, the Amended Complaint attempts to address the original complaint's deficiencies by simply increasing the number of bald assertions presented by plaintiff.  As a pleading, the Amended Complaint is not an improvement and may be more inadequate than the original complaint; both documents are frequently factually and legally

610217

indecipherable.  The Amended Complaint should be dismissed as against the City and Mayor Kos because it relies on conclusory allegations that are not entitled to a presumption of truth and does not plausibly state a claim upon which relief can be granted.

In preparing this memorandum, defendants have followed the Court's directive that they need not recreate their memorandum in support of their motion to dismiss the original complaint. See Document No. 71 at 4.  Defendants incorporate their previous memorandum, Document Number 23, by reference and specific references to relevant portions of that memorandum are included below.

## THE AMENDED COMPLAINT'S NEW ALLEGATIONS WITH RESPECT TO THE CITY AND MAYOR KOS

The following new conclusory allegations[1] regarding the City and Mayor Kos are contained in the Amended Complaint.  With respect to the City, the Amended Complaint alleges for the first time that:

51.  In July of 2013, Plaintiff Gilbert had no control over government investigations into Defendant Jebb's alleged conduct that the City of Chicopee reasonably believed violated Department Rules and Regulations.

52.  Plaintiff Gilbert did not initiate the subject complaints against Defendant Jebb.

53.  The Defendant City of Chicopee, through its executive, created this issue by ordering the Plaintiff to provide a summary of these events again to management.

Amended Complaint at ¶¶ 51-53.

---

[1] Defendants have not rehearsed allegations that first appeared in the original complaint and appear to be simply rephrased, without material alteration, in the Amended Complaint.

As to both the City and Mayor Kos, Count 2 of the Amended Complaint alleges:

> 117. By its action, inaction and deliberate indifference as set forth above, the City of Chicopee knowingly, willfully and intentionally allowed a policy and custom to exist which resulted in violations of the Plaintiff's continued due process rights of having a protected property interest in his continued employment pursuant to a collective bargaining agreement, which provided that covered employees could not be terminated without just cause.

> 118. Defendant Kos, as the final policy maker, participated and acquiesced to the policy and practices of Defendant City of Chicopee.

Amended Complaint at ¶¶ 117-118.  The Amended Complaint also incorporates, as Exhibit A, a letter from plaintiff's counsel that is addressed both to counsel for the City and to Mayor Kos. See Amended Complaint at Exhibit A.

As to Mayor Kos, the Amended Complaint adds that co-defendant, William Jebb, allegedly supported Mayor Kos during the 2012 mayoral race, while plaintiff and others supported his opponent.  See Amended Complaint at ¶¶ 60-61.  It also alleges, in Count 1, that "Defendant Kos, as the final authority, acquiesced to Defendant Jebb's conduct."  See Amended Complaint at ¶ 110.

In Count 4, "Abuse of Process," the Amended Complaint alleges:

> 132. An application for a show-cause hearing issued against the Plaintiff as a direct result of concerted conduct and planning by Defendants Jebb, Kos and Pronovost in an attempt to create a vehicle to terminate the Plaintiff's employment.

Amended Complaint at ¶ 132

Count 8, "Civil Conspiracy," contains the new allegations:

> 171. Defendants Jebb and Kos both knew that the collective bargaining agreement prevented them from implementing a discharge or discipline arising from the Plaintiff's July 2013 statement to government investigators.

172.   Defendants Kos (sic) then planned with Defendant Pronovost to have Pronovost seek criminal complaints against both the Plaintiff and Charette for their participation in a government investigation and for speaking out against Defendant Jebb's conduct.

Amended Complaint at ¶¶ 171-172.

<u>FACTS</u>

Solely for purposes of defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), defendants accept the facts, as opposed to conclusions, alleged in the Amended Complaint as true.

<u>STANDARD OF REVIEW</u>

The standard of review announced by the Supreme Court of the United States in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and confirmed by *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009) requires that:

To state a claim, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); "'naked assertions devoid of further factual enhancement'" need not be accepted, *Maldonado v. Fontanes*, 568 F.3d 263, 266 (1st Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949); and "[i]f the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal," *Tambone*, 597 F.3d at 442.

*Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 771 (1st Cir. 2011).   In analyzing whether a complaint states a plausible claim for relief, "To begin, the court must strip away and discard the complaint's conclusory legal allegations. Next, the court must determine whether the remaining factual content permits the reasonable inference that the defendant is liable for the misconduct alleged." *Shay v. Walters*, 702 F.3d 76, 82 (1st Cir. 2012) (citations omitted; internal quotation marks omitted).   In considering a motion to dismiss,

4

610217

the Court may consider exhibits to a complaint in addition to the allegations contained within its four corners.  See *Trans-Spec Truck Serv. v. Caterpillar Inc*., 524 F.3d 315, 321 (1st 2008).

## ARGUMENT

A.     Count 1 Fails to State Claims Against Mayor Kos Pursuant to 42 U.S.C. § 1983 and M.G.L. c. 12, §11I Upon Which Relief Can Be Granted.

       1.     The Amended Complaint's Conclusory Allegations Cannot Support a 42 U.S.C. § 1983 Claim Against Mayor Kos.

To the extent that Count 1seeks to impose liability as against Mayor Kos based on Mayor Kos' direct participation in conduct that allegedly violated plaintiff's rights, it relies solely on conclusory allegations.  See Amended Complaint at ¶ 105.  See also, *Id*. at 104, 107-108, 111-112.  At best, plaintiff has presented the Court with "formulaic recitation[s] of the elements" of plaintiff's constitutional claims that are not entitled to a presumption of truth and that do not establish a plausible entitlement to relief.  See *Iqbal*, 556 U.S. at 680-681.  Count I fails to state a claim against Mayor Kos based on an assertion that he was a direct participant in a violation of plaintiff's rights.

Paragraph 110 of the Amended Complaint alleges, "Defendant Kos, as the final authority,[2] acquiesced to Defendant Jebb's conduct."  Amended Complaint at ¶ 110.  This conclusory assertion is meaningless and is insufficient even as a recitation of the elements of a claim.  The allegation appears to conflate portions of the elements of various theories of liability.  Count 1 should be dismissed because it does not establish an affirmative causal link between

---

[2] As discussed below, to the extent that any claim depends on Mayor Kos' alleged status as an official with final policy making authority, it fails to state a claim upon which relief can be granted.

Mayor Kos' conduct and an alleged deprivation of plaintiff's rights  See, e.g., *Saldivar v. Racine*, 818 F.3d 14, 18 (1st Cir. 2016).

      2.      <u>The Doctrine of Qualified Immunity Precludes the Imposition of Liability</u>.

Defendants respectfully refer the Court to pages eight through thirteen of Document Number 23, which are incorporated herein by reference.  See Document No. 23 at 8-13.  The description(s) of the allegedly protected speech contained in the Amended Complaint remain confusing and difficult to parse.  Plaintiff has apparently attempted to address the fact that, as pled, the claim for First Amendment retaliation that was asserted in the original complaint rested on speech that owed its existence solely to plaintiff's official responsibilities by adding a conclusory allegation to the Amended Complaint.  The Amended Complaint asserts that "Cooperating with civil and criminal investigations as to the conduct of a coworker was not part of the Plaintiff's regular or routine duties as a Chicopee Police Officer."  Amended Complaint at ¶ 57.  This assertion would be inconsequential standing alone because it is unsupported and it is contradicted by other allegations contained in the Amended Complaint.

The Amended Complaint alleges that plaintiff was an internal affairs investigator who investigated co-defendant, William Jebb's, conduct and that of a Sergeant Dan Major.  See Amended Complaint at ¶¶ 69-71.  It also alleges, possibly in connection with a report plaintiff prepared regarding co-defendant, John Pronovost's, alleged conduct, that plaintiff was <u>ordered</u> "to provide a summary of these events again to management" and that plaintiff "would have been disciplined for refusing to follow a command if he refused to reduce the incident to writing on July 19, 2013."  Amended Complaint at ¶¶ 53-54.  These allegations are properly held against plaintiff in analyzing whether the Amended Complaint states a claim upon which relief can be

6

610217

granted.   See *San Gerónimo Caribe Project, Inc. v. Acevedo-Vilá*, 687 F.3d 465, 491-492 (1st

Cir. 2012).   See also, *Slavas, et al. v. Town of Monroe, et al*., 3:16-cv-30034-KAR, Document

No. 32 (D.Mass. March 10, 2017,) at 20-21, citing, *Id*.

With respect to any attempt the Amended Complaint may make to impose supervisory

liability, the facts alleged do not support an inference that plaintiff's claim rests on a clearly

established basis for the imposition of supervisory liability, for the reasons set forth above.   See

*Camilo-Robles v. Hoyos*, 151 F.3d 1, 6 (1st Cir. 1998).   Therefore, without more, Mayor Kos is

entitled to qualified immunity for any alleged action or inaction taken in his role as a supervisor.

Whether considered from the point of view of Mayor Kos as an alleged supervisor or

based on his own direct conduct, a reasonable official could conclude that plaintiff's speech was

"ordinarily within the scope" of plaintiff's job duties.   See *Lane v. Franks*, 134 S. Ct. 2369, 2379

(2014).   As alleged, plaintiff was an internal affairs investigator and therefore his conclusory

allegation that that cooperating with investigations into his coworkers' conduct was not part of

his "regular or routine duties" makes no sense, at best.   A reasonable official could conclude that

the alleged speech was within the scope of an internal affairs investigator's job duties.   As to the

report plaintiff authored, the Amended Complaint asserts that plaintiff was "literally . . .

instructed to make the speech at issue."   See *Decotiis v. Whittemore*, 635 F.3d 22, 32 (1st Cir.

2011).   A reasonable official could conclude that speech made in response to a direct command

was not made in plaintiff's capacity as a citizen.

More broadly, the contextual factors identified by the First Circuit in *Decottiis* could also

lead a reasonable official to conclude that plaintiff's speech was not made as a citizen.

7

610217

>Although no one contextual factor is dispositive, we believe several non-exclusive factors, gleaned from the case law, are instructive: whether the employee was commissioned or paid to make the speech in question, *Garcetti*, 547 U.S. at 421; the subject matter of the speech, id. at 421 (citing *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 414, 99 S. Ct. 693, 58 L. Ed. 2d 619 (1979)); whether the speech was made up the chain of command, see *id.* at 420; whether the employee spoke at her place of employment, see *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1205 (10th Cir. 2007); whether the speech gave objective observers the impression that the employee represented the employer when she spoke (lending it "official significance"), *Foley*, 598 F.3d at 7-8 & n.9; whether the employee's speech derived from special knowledge obtained during the course of her employment, see *Williams v. Dallas Ind. Sch. Dist.*, 480 F.3d 689, 694 (5th Cir. 2007); and whether there is a so-called citizen analogue to the speech, *Garcetti*, 547 U.S. at 423.

*Decotiis*, 635 F.3d at 32.  The confusing and internally inconsistent allegations contained in the Amended Complaint demand the conclusion that a reasonable official in Mayor Kos' situation would not necessarily have understood that Mayor Kos' conduct violated plaintiff's rights.

      2.      <u>The Amended Complaint Does Not State a Claim against Mayor Kos Pursuant to M.G.L. c. 12, §11I.</u>

For the reasons set forth in defendants' memorandum of law in support of their motion to dismiss plaintiff's original complaint, Count I should be dismissed as against Mayor Kos to the extent that it asserts a claim pursuant to M.G.L. c. 12, §11I.  See Document No. 23 at 13-15.

B.      <u>Count II Fails to State a Claim for *Monell* Liability as against the City</u>.

The Amended Complaint's allegations with respect to plaintiff's claim against the City are both conclusory and confused.  As set forth in Document No. 23, a municipality cannot be held liable on a theory of *respondeat superior*.  A plaintiff bears the burden of pleading facts that create a plausible inference that an unconstitutional policy, custom or practice of the municipality caused the constitutional violation alleged.  See Document No. 23 at 15-16, and cases cited.  The Amended Complaint relies on conclusory allegations to the effect that an un-

described "policy and custom" of the City resulted in the alleged deprivation of plaintiff's rights. See Amended Complaint at ¶¶ 116-117.  These bare assertions do not state a plausible claim(s) against the City.

Further, the Amended Complaint alleges that, "Defendant Kos, as the final policy maker, participated and acquiesced to the policy and practices of Defendant City of Chicopee." Amended Complaint at ¶ 118.  Neither defendants nor the Court should be put to the task of attempting to guess what plaintiff's intent is in proffering this, at best, circular allegation. Nonetheless, it is clear that plaintiff's assertion that Mayor Kos was a "final policy maker" is conclusory and cannot support a claim upon which relief can be granted.

While "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986), "[a] single decision by a municipal policymaker constitutes official policy 'only where the decision maker possesses final authority to establish municipal policy with respect to the action ordered.'" *Freeman v. Town of Hudson*, 714 F.3d 29, 38 (1st Cir. 2013), quoting, *Pembaur*, 475 U.S. at 481.  "The fact that a particular official -- even a policymaking official -- has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion . . . The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Pembaur*, 475 U.S. at 481-482 (citation omitted; footnotes omitted).  "When determining whether a decision maker exercises final authority, '[c]ourts must look to state law, including 'valid local ordinances and regulations,' for descriptions of the duties and obligations of putative policymakers in the relevant area at issue.'" *Freeman*, 714 F.3d at 38, quoting, *Walden v. City of Providence*, 596 F.3d 38, 56 (1st Cir. 2010) (further citation

9

omitted).  The burden is on a plaintiff to plead facts that create a plausible inference that a particular municipal official or body was the "final policymaker" with respect to the challenged decision.  See *Freeman v. Town of Hudson*, 714 F.3d 29, 37-38 (1st Cir. 2013).  Cf. *Kelley v. Laforce*, 288 F.3d 1, 9-10 (1st Cir. 2002).  Here, plaintiff has failed to meet this burden and Count II should be dismissed.

C.     Count 3 Fails to State a Claim Under the Massachusetts Whistleblower Act Upon Which Relief Can Be Granted.

The disconnected series of events referred to in the Amended Complaint do not support a plausible inference that conduct protected by M.G.L. c. 149, § 185, the Massachusetts Whistleblower Act (the "MWA"), led to actionable retaliation against plaintiff by the City.  The MWA "prohibits public employers from retaliating against employees who participate in any of the act's enumerated protected activities."  *Welch v. Ciampa*, 542 F.3d 927, 942 (1st Cir. 2008) (emphasis added).  See also, M.G.L. c. 149, § 185(b).  It defines "employer," as "the commonwealth, and its agencies or political subdivisions, including, but not limited to, cities . . . ."  M.G.L. c. 149, § 185(a)(2).  It defines "retaliatory action," as "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment."  M.G.L. c. 149, § 185(a)(5).  "To prevail on an MWA claim, an employee must show 'that he engaged in protected activity and that his participation in that activity played a substantial or motivating part in the retaliatory action.'"  *Pierce v. Cotuit Fire Dist.*, 741 F.3d 295, 303 (1st Cir. 2014), quoting, *Welch v. Ciampa*, 542 F.3d 927, 943 (1st Cir. 2008) (further citation omitted).

Paragraph 128 of the Amended Complaint lists the "Retaliatory Actions" that plaintiff allegedly suffered as a result of conduct allegedly protected by the MWA.  See Amended Complaint at ¶ 128.  Taking these in turn, the facts as pled do not support a plausible inference

10

that the City (or Mayor Kos) had any role in the alleged malicious prosecution of plaintiff or in making him the subject of a "Defamatory Falsehood."  See Amended Complaint at ¶ 128(a), (b), (c).  Further, these independent torts to which plaintiff was allegedly subjected (by an inferior officer, co-defendant, John Pronovost) do not constitute "retaliatory action" as defined by the MWA.  See M.G.L. c. 149, § 185(a)(5).  See also, Amended Complaint at ¶ 89.  To read the MWA differently would make every act of retaliation to which a public employee may be subject (including by inferiors) based on conduct that is protected by the MWA actionable against the public employer.

The Amended Complaint next asserts that beginning on May 6, 2015, plaintiff was removed from all overtime duties and that these hours were given to friends of defendants, William Jebb and John Pronovost.  See Amended Complaint at ¶ 128(d), (e).  The Amended Complaint does not allege who removed plaintiff from overtime duties.  As pled, the date May 6, 2015 does not bear any obvious connection to any other event alleged in the Amended Complaint.  See Amended Complaint at ¶ 128(d).  The Amended Complaint relies on the unsupported assertion that plaintiff was removed from overtime duties in retaliation for conducted protected by the MWA.  It does not allege facts from which it can be plausibly inferred that plaintiff's participation in protected activity played a substantial or motivating part in his removal from overtime duties.

The remaining alleged acts of retaliation listed in Paragraph 128 of the Amended Complaint are merely alluded to.  See Amended Complaint at ¶ 128(f)-(i).  No supporting facts are proffered with respect to any of these events.  See *Id*.  These bare assertions will not support plaintiff's claims.

11

Consideration of the letter attached to the Amended Complaint as Exhibit A does not further plaintiff's cause.  Any attempt to align or compare the letter to the allegations contained in the Amended Complaint merely provides additional confusion as to the alleged basis for plaintiff's claim.  Even viewed as a whole, the Amended Complaint's allegations in support of plaintiff's MWA claim represent a grab-bad of vaguely described alleged events that do not support the element of causation.  Count 3 should be dismissed.

D.    The Facts, As Pled in Support of Plaintiff's Intentional Tort Claims, Do Not Overcome the Common Law Immunity Enjoyed by Mayor Kos.

The Amended Complaint rests on conclusory allegations of Mayor Kos' conduct. Therefore, as set forth in Document Number 23, plaintiff's claims for intentional torts, as pled against Mayor Kos, are barred by common law immunity.  See Document No. 23 at 18-19.

E.    Count 4 Fails to State a Claim for Abuse of Process Against Mayor Kos.

The claim for abuse of process that is asserted against Mayor Kos in the Amended Complaint rests on conclusory allegations.  It expands on the allegations contained in the original complaint only by adding an additional conclusory allegation.  See Amended Complaint at ¶ 132.  For that reason and for the reasons set forth in Document No. 23, Count 4 of the Amended Complaint should be dismissed.  See Document No. 23 at 19-21.

E.    Count 5 Does Not State a Claim for Defamation Against Mayor Kos.

The Amended Complaint, like the original complaint, does not allege the contents of any statement regarding the plaintiff made by mayor Kos.  It also similarly relies on a "false light" theory of defamation, which is not cognizable under Massachusetts law.  Therefore, Count 5 should be dismissed, as set forth in Document No. 23.  See Document No. 23 at 21-22.

12

F.      Count 6 Fails to State a Claim for Intentional Infliction of Emotional Distress Against Mayor Kos.

Count 6 of the Amended Complaint does not rest on alleged conduct on the part of Mayor Kos that rises to the level of "extreme and outrageous."  Therefore, Count 6 should be dismissed, for the reasons discussed in Document No. 23.  See Document No. 23 at 22-23.

G.      Count 7 Does Not State a Claim Against Mayor Kos for Malicious Prosecution.

The Amended Complaint continues to rely on conclusory allegations in asserting a claim for malicious prosecution against Mayor Kos.  It should be dismissed for the reasons contained in Document No.  23.  See Document No. 23 at 23.

H.      Count 8 Does Not State a Claim for Civil Conspiracy Against Mayor Kos.

Once again, Count 8 merely expands on the claims for civil conspiracy asserted in the original complaint by adding new conclusory allegations.  See Amended Complaint at ¶¶ 171, 172, 176.  As set forth in Document No. 23, Count 8 of the Amended Complaint should be dismissed.  See Document No. 23 at 23-28.

**CONCLUSION**

For the foregoing reasons, the Amended Complaint should be dismissed as against the City of Chicopee and Mayor Kos.

13

610217

THE DEFENDANTS,
CITY OF CHICOPEE AND
RICHARD KOS


By_____*/s/ Nancy Frankel Pelletier*_____
Nancy Frankel Pelletier, Esq.,BBO# 544402

~and~

By_____*/s/ David S. Lawless, Esq.*_____
David S. Lawless, Esq.-BBO #664754
Both of
Robinson Donovan, P.C.
1500 Main Street, Suite 1600
Springfield, Massachusetts 01115
Phone (413) 732-2301 Fax (413) 452-0342
npelletier@robinsondonovan.com
dlawless@robinsondonovan.com


## CERTIFICATE OF SERVICE


I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 7th day of April, 2017.


*Subscribed under the penalties of perjury.*


_*/s/ Nancy Frankel Pelletier, Esq.*_____
Nancy Frankel Pelletier, Esq.

14

610217